May 29th, 1905.

————o————

No. 3672.

(Court of Appeal, Parish of Orleans.)

MICHAEL FLESH vs. THE UNION FERRY COMPANY.

Appeal from Twenty-eighth Judicial District Court, Parish of Jefferson.

A. E. Billings. and L. H. Marrero, Jr., for Plaintiff and Appellee.

Frank E. Rainold, for Defendant and Appellant.

1.  Where a navigable stream separates parishes or States, their boundary extends to the thread or channel of the stream, and their respective Courts have jurisdiction of offenses and *quasi*-offenses occurring between the bank on their respective side and said midchannel.

2.  Defendant, owning a wharf constructed on the bank of the river to which its ferry boats are moored, the first to the wharf and the second to the first, the second as well as the first will be considered as being moored to the wharf.

3.  In making a landing it is necessary to have more than one deck-hand, and where it is shown that the company employed but one man, who, besides, was the fireman, it will be considered negligence on the part of the ferry company.

359

4. The fact that plaintiff knew that the stern line was not tied when he attempted to leave the boat, is not negligence, when the proof is that the "exit-bar" had been removed, and other passengers were disembarking, and that plaintiff knew that it was usual to remove the "exit-bar" before tying the stern line.

ESTOPINAL, J. Plaintiff sued for Two Thousand Dollars ($2,000.00), for injuries which he suffered while crossing the Mississippi river on one of the defendant's ferry boats operating between the City of New Orleans and the town of Gretna, in the Parish of Jefferson, averring that the injuries were caused by the negligence of the defendant in this, that when the ferry boat reached Gretna, where plaintiff lives, she was moored to or against a larger ferry boat which was lying against a floating wharf of defendant's, in order that passengers might disembark, but that before the boat had been securely moored by means of lines fore and aft, a long wooden bar, used to prevent passengers from passing off, was removed, which act was notice to the passengers that they could safely leave the boat, and that plaintiff, following the example of other passengers, proceeded to walk off the boat for the purpose of going ashore, when, in so doing, by reason of the improper tying or mooring of the ferry, he fell between the boats, and in falling received severe bruises and lacerations on his shins and legs as well as some injury to his shoulders, from which he has not fully recovered.

Defendant came in by way of exception urging want of jurisdiction, on the ground that the accident had not occurred within the Parish of Jefferson, and that this suit should have been brought at its domicile at the City of New Orleans, and further, that the action is *ex-contractu*, and that in no event had the District Court of the Parish of Jefferson jurisdiction.

These exceptions were overruled, and thereupon the defendant answered by general denial, coupled with the specific denial that plaintiff was free from contributory negligence, and subsequently

filed a supplemental petition averring that if plaintiff suffered any injuries they were entirely due to his own fault and negligence, and in any event, that the said fault and negligence of plaintiff contributed thereto.

On appeal defendant urges seriously the exceptions already alluded to, and we must therefore consider these first.

Defendant's counsel, in a brief which shows great industry, calls our attention to Act No. 92 of 1884, which fixes the limits of the various wards of the Parish of Jefferson, in which the boundaries of both ward one (1) and ward two (2) is given as follows:

First Ward: The Ward shall be embraced within the territory beginning at a point *on the* Mississippi river, right bank, on the line of the Parish of Orleans, extending to the lower line of the village of New Gretna, on said river, and in the rear to a line intersecting the Parish of Orleans.

Second Ward: From the line of the village of New Gretna to the center of Le Voissier street, on the Mississippi river.

Defendant therefore argues that the jurisdiction of the Parish of Jefferson ends at the edge of the batture or wharf facing the river.

In almost every act or statute creating States, parishes or counties, they are stated therein as fronting on or bounded by certain navigable streams, but it has been universally held that these territorial subdivisions extend *"medium filium aquae,"* and since by the term "thread of the stream," is meant the channel thereof, it is apparent that the cause of this action must have happened on the Jefferson Parish side of the channel of the river.

Criminal Laws are strictly construed.

Article IX of our present Constitution provides: "That all trials shall take place *in the Parish where* the offense was committed."

In the case of State vs. Burton and Jenkins, 106 La., page 732,

the court held that the Parish of De Soto had criminal jurisdiction to the middle of the Sabine River.

Now the Court of the Parish of Jefferson, having criminal jurisdiction to the middle of the river in front of it, is its civil jurisdiction more restricted?

It would be strange, indeed, since the jurisdiction of the Parish of Orleans does not extend at this point beyond the middle of the river, that there should be so great a vacant stretch where the courts of no parish in the State would have jurisdiction.

But the defendant's exceptions may be still more easily met.

We may rely on the simple proposition, "was or was not defendant's ferry boat actually or constructively moored to the bank sufficiently so to warrant this Court in holding that she was moored to the bank?" We believe so.

If not admitted, it is not and cannot be denied that had the boat on which this accident occurred been tied or moored to defendant's wharf it would then have been lying within the Parish of Jefferson, and tne jurisdiction of its courts.

The record shows that the night-boat (the boat in this case) was not moored to the wharf, because the day-boat, also owned by defendant, had previously been tied to said wharf; therefore it was that the night-boat was, of necessity, tied to the day-boat.

The intervening boat was not a trespasser, but was defendant's own property, and its landing at that point the voluntary act of defendant, by which act defendant, in our opinion, extended its wharf.

Any other deduction would create the peculiar situation of courts in the Parish of Jefferson exercising jurisdiction in certain causes of action arising during the day at a certain point on the river, and losing that right in causes arising during the night at the same point.

The objection that the action was one *ex-contractu* cannot hold,

in view of the allegation that an act not only of omission, but of commission as well, was done by defendant in that: the bar across the "exit space" on the ferry boat was removed, which was tantamount to a notice to passengers that they could safely leave the boat, and which, we think, was the proximate cause of the accident.

Plaintiff would not be engaged in this litigation were it not that the defendant negligently removed the bar, which not only permitted but invited him to attempt to leave the boat.

The exceptions properly overruled.

## On the Merits.

The testimony is voluminous, and as is usually the case where there are many witnesses to an occurrance, no two persons see it alike or give the same version of occurrences, and it would be folly to attempt to reconcile them.

Without referring to any of the testimony specially, we will set out what we believe, from an examination of the testimony, to be the issue, and from those form our conclusions.

The legal proposition is clear that it was the duty of the defendant to employ skillful and competent servants; that the boat, upon reaching its landing place, should have been securely tied or made fast before removing the "exit bar," which permits passengers to disembark.

The testimony shows that the person employed by the defendant, if not actually unskillful in the discharge of the physical task imposed upon him, certainly possessed a very low order of intelligence, evidenced by his act in removing the bar immediately after tying the bow-line and before looking after the stern-line, and otherwise seeing to it that the boat was properly landed and touching its wharf from stern to stern, as should have been the case. His act in removing the "exit-bar" very naturally invited

the passengers, and was an assurance to them that they could, with safety, leave the boat.

Among the passengers leaving the boat was the plaintiff, who, not as fortunate as the others who had preceded him, fell between the two boats, narrowly escaping death by drowning or by being crushed.

Under this statement of facts, "was the defendant guilty of negligence?" We believe, unquestionably, and it was chargeable with gross negligence, but, says the defendant, even though we are chargeable with negligence, we are relieved of all liability by reason of the fact that the plaintiff contributed to this accident and his consequent injuries through his own negligence.

It is true that the jurisprudence is well settled that contributory negligence on the part of the plaintiff is a bar to a recovery, although the defendant be in fault, our own reports teeming with decisions to that effect.

Let us now see whether in the case at bar, the negligence with which plaintiff is charged is of such a nature as to bring it under the application of the doctrine just stated.

Plaintiff, himself, testifies that he knew that the stern line had not been tied when the "exit-bar" was shoved back, and therefore it is defendant charges plaintiff with negligently attempting to leave the boat, well knowing that it had not been made fast in the stern.

Say the defendant, plaintiff should not have left the boat until the stern line had been tied.

From our appreciation of the testimony we find that the stern line was not always if ever tied, as a condition precedent to permit passengers to leave, and, therefore, we do not see why plaintiff should have had reason to believe that it would be tied on the night of the accident, especially when he had seen the defendant's servant push back the "exit-bar," a notice that the boat is moored

or landed. Had not a number of other passengers preceded him?

Another indication to him that all was well and safe: "Is is an act of negligence for the company or its servants, to let down the chains before the boat is properly secured to the bridge which guard the passengers from the ferry-boat to the bridge; for thereby the passengers are assured that the boat is properly secured and the passageway safe for exit."

(American and English Encyclopaedia of Law, Vol. 7, p. 949.)

The facts in this case, we think, warrant us in applying the very reasonable doctrine laid down in McGuire vs. Railroad Company, 46 An., p. 1554, the court saying:

"We are safe, we think, in affirming as a rule of protection to life and limb, that neglect or imprudence of persons injured by railroad accidents will not shield the company from damages, if, with proper care, their employees in charge of the train can avoid the injury and fail in that care. Thus qualified, contributory negligence is not to be deemed a license for recklessness and neglect. The qualification is aptly stated in a recent decision of the Supreme Court of the United States, and in our appreciation finds application to this case. Although the defendant's negligence may have been the primary cause of the injury, yet an action for such injury cannot be maintained if the proximate and immediate cause can be traced to the ordinary care and caution of the persons injured. Subject to this qualification grown up in recent years, that the contributory negligence of the party injured will not defeat recovery, if he shows the *defendant might by the exercise of ordinary* care and prudence have avoided the consequence of the injured party's negligence."

The testimony shows that the defendant's negligence in this cause consists primarily and is traced to its exercise of too great economy, there being combined in one person on the night-ferry the duties of a fireman, a bow-line tender, a bar (exit) tender,

365

and a stern-line tender, these duties on the day-boats being attended to by as many different persons. It appears to us that even greater care was required at night.

From an examination of the record we are satisfied that the quantum of damages fixed by the Judge *a qua* is not inadequate nor excessive. Plaintiff's injuries were, we think, quite severe and very painful, and deem it safe to adopt the conclusion of our learned brother of the lower court who heard the witnesses and saw and examined plaintiff's wounds, who said that "considering the whole evidence in this case I do not think the plaintiff's injuries are of a permanent character. He seems to go about as usual, has attended the trial of the case both in Gretna and New Orleans, does not seen to have been incapacitated from attending to his work, and an allowance of Five Hundred Dollars ($500.00) seems amply sufficient to compensate him for the injuries which he received."

The reasons of the judge here given have reference to the permanency of the plaintiff's injuries and his ability to attend to his usual work, and has no reference, as we appreciate the testimony, to his condition for a period following the accident, as proof is made that plaintiff employed some one to replace him at his post in the brewery in which he was employed, and the doctor's fee and drug bill had to be met.

We are of the opinion that the judgment appealed from does substantial justice, and it is affirmed.

May 29th, 1905.

Rehearing refused, June 26th, 1905.

Writ refused by Supreme Court, August 8th, 1905.